**Maryanne Sheldrick PAIGE, Plaintiff,**

v.

**POLICE DEPARTMENT OF THE CITY OF SCHENECTADY; City of Schenectady; Michael Guthinger, Individually and as a former Police Officer, Schenectady Police Department; George A. Davidson, as Administrator of the Estate of Joseph Formosa, Former Assistant Chief, Schenectady Po-**

lice Department; Richard X. Nelson, Individually and as former Chief, Schenectady Police Department; Victor Palmo, Individually and as former Captain, Schenectady Police Department; Defendants.

No. 97–CV–455.

United States District Court,
N.D. New York.

Nov. 30, 2000.

McNamee, Lochner, Titus & Williams, P.C., for Plaintiff, Albany, John J. Privitera, of counsel.

Office. of the Corporation Counsel, City of Schenectady, for Defendants Police Dep't, City of Schenectady, Davidson, Nelson, and Palmo, Schenectady, L. John VanNorden, Ass't Corporation Counsel, of counsel.

O'Connell and Aronowitz, for Defendant Guthinger, Albany, Michael L. Koenig, of Counsel.

## MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiff Maryanne Sheldrick Paige ("Paige" or "plaintiff") instituted this action on April 2, 1997, alleging causes of action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. Specifically, Paige alleges con-

spiracy to obstruct justice, failure to prevent the obstruction of justice despite knowledge of the conspiracy, deprivation of liberty without due process, denial of equal protection of the laws, denial of her right to access the courts, and deprivation of her personal security. Defendants Police Department of the City of Schenectady, City of Schenectady, George A. Davidson, Richard X. Nelson, and Victor Palmo (collectively the "City defendants") move for summary judgment. Defendant Michael Guthinger ("Guthinger") separately moves for summary judgment. Plaintiff opposes both motions. Oral argument was heard on April 28, 2000, in Albany, New York. Decision was reserved.

## II. FACTS

Paige alleges that late in the evening of August 12, 1981, when she was twelve years old, a Schenectady police officer forced her into a marked police vehicle, drove around the park, then assaulted her. According to Paige, the officer fondled her, handcuffed her, and choked her until she passed out or almost passed out. These allegations are disputed by defendants; however, they are accepted as true since facts and inferences therefrom must be viewed in the light most favorable to the nonmovant on a motion for summary judgment.

Paige then found herself near the edge of the park in a ditch, disoriented but no longer handcuffed. She went to a nearby sandwich shop, where the police and her parents were called.

The following facts are undisputed, unless otherwise noted. Police investigators responded to the call. Her father took her to the hospital. Paige's injuries included abrasions to her wrists, marks on her neck, and broken blood vessels in her eyes. It is disputed whether or not photographs of plaintiff's injuries were taken at the hospital. Plaintiff later gave a lengthy statement that was memorialized in writing by the investigator and signed by her. This statement identified police vehicle number 114 as the vehicle that was involved.

Police investigators, at some later time, took photographs of the alleged crime scene at the park, accompanied by Paige. The investigation continued, but vehicle 114 was not photographed nor processed as a crime scene. The investigation revealed that vehicle 114 was driven by Guthinger on the night in question.

The police called then-police officer Guthinger in for questioning, but on the advice of counsel he asserted his Fifth Amendment right to remain silent. Police discussed with Paige and her parents the possibility of taking a lie detector test to substantiate her story, but the test was never conducted. They also discussed a line up, but none was conducted. No action was taken by the police department against Guthinger, either as an internal disciplinary matter or as a criminal matter.

Four or five years after the alleged attack an attorney told Paige that no file could be located regarding the 1981 incident. In 1989 plaintiff saw Guthinger on a television report and seeing him confirmed that he was her alleged assailant in 1981. At approximately the time she turned 18, plaintiff made an informal request of the then-Mayor of the City of Schenectady ("the Mayor") for information or records regarding the 1981 incident. The Mayor told plaintiff that there were no such records. She never made a request for records under a freedom of information law.

In November 1996 a newspaper reporter revealed to Paige the existence of the police file regarding the 1981 incident. The reporter apparently contacted her as a follow up to a story about Guthinger being convicted of attacking a woman in Central Park in 1995. This action followed.

## III. DISCUSSION

### A. Procedural Posture

Prior to answering plaintiff's complaint, the City defendants moved for dismissal

on statute of limitations grounds. Defendant Guthinger did not make a similar motion. By Memorandum–Decision and Order filed on May 7, 1998, District Judge Lawrence Kahn found that plaintiff's allegation of fraudulent concealment stated a claim and was sufficient to preclude dismissal prior to completion of discovery. While the City defendants argued that Paige had constructive knowledge at the time she reached age eighteen to have brought the claims at that time, the court determined that the earliest date it could identify as a matter of law, based upon the allegations of the complaint, as the date of accrual was 1996. Accordingly, the claims could not be dismissed at that time on statute of limitations grounds. However, the court specifically reserved to the City defendants the right to renew their motion to dismiss, on grounds other than the statute of limitations, at a later time. It also acknowledged that in the alternative, the defendants may wait until the completion of discover to bring a motion for summary judgment. Therefore, a later summary judgment motion based upon statute of limitations grounds brought by the City defendants is permissible. Moreover, Guthinger did not make an earlier motion to dismiss and therefore would not be bound by any ruling made on the City defendants' prior motion.

Now that discovery is completed, all the defendants move for summary judgment on the basis of the statutes of limitations. As such a motion was contemplated at the time the City defendants' motion to dismiss was denied, it is now properly before the court for decision.

### B. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 436 (2d Cir.1999). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Richardson*, 180 F.3d at 436; *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983). Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. At that point the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348.

### C. Statutes of Limitations

The applicable statute of limitations for actions brought pursuant to Sections 1983 and 1985 is three years. *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 331 (2d Cir.1997). For actions brought pursuant to Section 1986, one year is the applicable limitations period. 42 U.S.C. § 1986. A claim accrues when the plaintiff knows or has reason to know of her injury. *Jaghory*, 131 F.3d at 331; *Eagleston v. Guido*, 41 F.3d 865, 870 (2d Cir.1994). The statute of limitations is tolled during a period of infancy. *See* N.Y. C.P.L.R. § 208; *Henry v. City of New*

*York,* 94 N.Y.2d 275, 278, 702 N.Y.S.2d 580, 724 N.E.2d 372 (N.Y.1999).

The alleged assault that forms the basis for this law suit took place in 1981. Paige does not dispute that she was aware of the alleged assault since its occurrence in 1981. There is no question that the applicable statutes of limitations were tolled during her infancy.

Paige reached the age of majority on October 13, 1986. The statutes of limitations began to run on October 13, 1986, when the infancy toll ended. Thus, for actions brought pursuant to Sections 1983 and 1985, the statutes of limitations expired on October 13, 1989. For actions brought pursuant to Section 1986, the statute of limitations expired on October 13, 1987. This lawsuit was filed on April 2, 1997, approximately ten years after the statute of limitations expired for claims under Section 1986, and eight years after the statutes of limitations expired for claims under Sections 1983 and 1985. Thus, actions brought pursuant to Sections 1983, 1985, and 1986 are untimely absent some exception to the standard application of the statutes of limitations.

■ Fraudulent concealment or misrepresentation by defendants tolls a limitations period until the plaintiff discovers, or by due diligence should have discovered, her cause of action. *Keating v. Carey,* 706 F.2d 377, 381–82 (2d Cir.1983). Paige contends that defendants fraudulently concealed facts essential to her claims. On the basis of this fraudulent concealment, plaintiff argues that her claims did not accrue until 1996, when she learned of the existence of the investigatory file from a reporter, thus discovering facts essential to her claims. Under this theory, the applicable statutes of limitations were tolled until her discovery, in 1996, of these essential facts. According to plaintiff's argument, therefore, all her claims were timely brought.

■ Paige's first four causes of action allege conspiracy to obstruct justice, negli-

gent failure to prevent a conspiracy to obstruct justice, deprivation of due process and equal protection of the law, and deprivation of access to the courts. Each of these four causes of action are brought against all defendants. The basis for these four causes of action is defendants' alleged cover-up of their inadequate investigation of plaintiff's claims of sexual assault. The fifth cause of action, brought against defendants Guthinger, the City of Schenectady Police Department and the City of Schenectady, alleges excessive force used by Guthinger against Paige in the 1981 incident.

In order to determine whether a genuine issue of fact remains for trial on the issue of an equitable toll of the statute of limitations, it is necessary to examine what facts were known to Paige, or with due diligence she could have discovered, on or before October 13, 1987, and October 13, 1989. If facts sufficient to state a claim were known or with due diligence could have been known to plaintiff as of those dates, then equitable tolling of the statutes of limitations is inappropriate and summary judgment must be granted. On the other hand, if plaintiff did not have sufficient information to commence the action by those dates, then an issue would remain for trial and summary judgment would be inappropriate.

Plaintiff knew of the assault in 1981, at the time of its occurrence, and at all times thereafter. She also knew that her assailant was a police office and that the assault took place in a marked police vehicle. She knew the identifying number of the police vehicle involved, and that her complaint was investigated near the time of its occurrence. These facts relating to the assault are sufficient to state a claim of excessive force pursuant to Section 1983. Thus, plaintiff knew sufficient facts well before the October 13, 1989, expiration of the statute of limitations for her fifth cause of action in order to commence a lawsuit pursuant to Section 1983. Accordingly, no equitable toll is appropriate and summary

judgment must be granted as to Paige's fifth cause of action.

In addition to knowing the facts relating to the assault as just recited, Paige knew that she had been interviewed by a police investigator, who wrote a lengthy report which she signed. She believed that photographs had been taken of her at the hospital. She knew that police investigators went to the scene in the park and took photographs there. She learned that the driver of police vehicle 114, identified by her as the vehicle involved in the assault, had been driven by Guthinger on the night of the assault. Additionally, she was aware that no charges were ever lodged against Guthinger.

Before Paige reached her eighteenth birthday she had learned from attorneys she retained that the police investigatory file relating to Guthinger's assault on her could not be located by the police, the attorneys having been told upon inquiry that no such file existed. Shortly after her eighteenth birthday, plaintiff sought help from the Mayor. The Mayor inquired about the police investigatory file, but was told that no such file existed. The Mayor then told her that no such file existed.

Thus, while knowing that an investigation had in fact been conducted, that photographs had been taken, and that she had signed a lengthy report during the investigation, Paige blandly accepted that no investigatory file existed. She never made a written request for the file, and she never attempted to obtain the file through freedom of information laws. She never even went to the police station personally to inquire. It is apparent, therefore, that with due diligence she could have discovered the existence of the file.

Paige contends, however, that defendants concealed from her the existence of the file, preventing her from commencing the first, second, third, and fourth causes of action. Again, by the time she had become an adult plaintiff knew that the assault had occurred, an investigation had been conducted, a report had been written,

and photographs had been taken. She also knew that there had been talk of a lie detector test to corroborate her story and of a line up so she could attempt to identify her attacker. She knew that neither of these investigatory tools were used, but that on several occasions was told by the police that they had insufficient facts to support her allegations of assault. Paige and her family inquired about the progress of the investigation, but were not informed of results. Further, she knew that Guthinger had never been charged related to the assault, and in fact had remained on the police force for some years afterward. Finally, based upon two inquiries around the time of her eighteenth birthday she was told that there was no investigatory file.

Armed with all of this knowledge, Paige should have been alerted that there may be some sort of cover-up occurring. With due diligence she could have inquired further and discovered additional facts to support her causes of action. Even without the police investigatory file regarding the 1981 incident, Paige had at her disposal, on October 13, 1987, and October 13, 1989, more than sufficient facts to commence this action. Under such circumstances, the City defendants' concealment of the investigatory file from her does not toll the statute of limitations.

Plaintiff cites *Yeadon v. New York City Transit Auth.*, 719 F.Supp. 204 (S.D.N.Y. 1989) in support of her arguments that summary judgment should be denied. In *Yeadon*, the plaintiffs "introduced sufficient evidence to create issues of fact as to the availability" of a toll in the limitations period based upon fraudulent concealment of facts that would have revealed plaintiffs' claims for false arrest. *Id.* at 209. The plaintiffs in *Yeadon* uncovered an investigative report finding irregularities in arrests that was concealed from them and set forth repeated misrepresentations by defendants about the circumstances surrounding their arrests. *Id.* at 208–09.

Plaintiffs created a question of fact as to their lack of awareness of the falsity of their arrests due to defendants' concealment. *Id.* at 210. Additionally, plaintiffs in *Yeadon* made a preliminary showing of diligence to discover the true facts surrounding their arrests. *Id.* The *Yeadon* Court therefore found that an issue for trial existed. *Id.* at 209–10.

Here, unlike the plaintiffs in *Yeadon*, Paige had knowledge of the assault, the investigation, the lack of action to prosecute her assailant, and the fact that the investigatory file was lost or destroyed. Merely having been told by her prior attorney and the Mayor that there was no investigatory file is insufficient to support a claim of fraudulent concealment, given plaintiff's knowledge of all the other facts. Moreover, the lack of a meaningful investigation by the Schenectady Police Department of very serious charges made against officer Guthinger and the subsequent claim that the investigatory file was lost or destroyed are evidence that the City defendants concealed the assault upon the plaintiff from the public. As a result, the public had no knowledge of the assault and, to put it kindly, the inept investigation. Paige, however, was in a unique position in that she always possessed detailed knowledge of the facts surrounding the assault and the investigation or lack thereof.

Paige knew of sufficient facts, or with due diligence could have secured such knowledge, in order to commence a suit based upon her first, second, third, and fourth causes of action well within the applicable statutes of limitations. Evidence Paige sets forth indicating concealment of the assault from the public does not support fraudulent concealment from her, given her detailed knowledge. Accordingly, no equitable toll is appropriate and summary judgment must be granted as to Paige's first, second, third, and fourth causes of action.

## IV.  CONCLUSION

There is no genuine issue for trial on the issue of availability to Paige of a toll in the statutes of limitations based upon fraudulent concealment. Paige's claims therefore accrued in 1986, when she reached the age of majority and the infancy toll expired. The complaint, filed in 1997, is barred by the applicable statutes of limitations.

Accordingly, it is

ORDERED that defendants' motions for summary judgment are GRANTED and the complaint is DISMISSED in its entirety.

IT IS SO ORDERED.